FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

99 FEB 25 PM 4: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

CYNTHIA WILSON,                    )
                                   )
    Plaintiff,                     )
                                   )
    v.                             )          CV 98-BU-0436-S
                                   )
NEW  SOUTH  FEDERAL  SAVINGS       )
BANK,                              )
                                   )          ENTERED
    Defendant.                     )
                                   )          FEB 2 5 1999


## Memorandum Opinion


Plaintiff, Cynthia Wilson ("Ms. Wilson"), filed this action alleging that Defendant, New South Federal Savings Bank ("New South"), refused to promote her because of her race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000 et seq., Title VII of the Civil Rights Act of 1964, as amended. The matter is now before the court on New South's motion for summary judgment, filed November 16, 1998. In addition, Ms. Wilson has filed a motion to strike portions of an affidavit sworn by Ms. Carolyn Massie, her supervisor at New South, submitted by New South in support of its motion for summary judgment. New South filed a response in opposition to the motion to strike. The parties have fully briefed the motion for summary judgment and have submitted documentary evidence. The motions are now ripe for decision and, upon due consideration, the court concludes that Ms. Wilson's motion to strike is due to

22

be denied[1] and New South's motion for summary judgment is due to be granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. <u>Id</u>. at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. <u>Celotex</u>, 477 U.S. at 324; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir.

---

[1] While the Court denies Ms. Wilson's motion to strike portions of Ms. Massie's affidavit, the Court will not consider ¶ 19 of her affidavit in deciding the motion for summary judgment. See notes 9 and 10, below, and accompanying text.

1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. Cf. Mesnick v. General Elec. Co., 950 F.2d 816, 820 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, Fed. R. Civ. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Id. See also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), cert. denied, 516 U.S. 817 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)). With these standards in mind, the court will now proceed to consider New South's motion for summary

judgment.

## STATEMENT OF FACTS[2]

The facts of this case are highly contested. However, taken in the light most favorable to the plaintiff, the evidence indicates the following: On August 21, 1996, Ms. Wilson, who is African-American, was hired by New South in a full-time Processor Support position in the Direct Loan Department. The decision to hire Ms. Wilson was made by Carolyn Massie, a Vice President in the Retail Consumer Mortgage Division and manager of the Direct Loan Department. Ms. Massie, who is white, became Ms. Wilson's supervisor.

On December 3, 1996, Ms. Massie completed a "90-Day Quality of Hire Survey" evaluating Ms. Wilson's job performance. Ms. Massie found that Ms. Wilson rated as a "2" on a scale of 1 to 4, indicating that Ms. Massie considered that she "[h]as some performance problems, but seems to be improving steadily" and that she "need[s] to [be] monitor[ed]." On this same survey, Ms. Massie added that she gave the plaintiff such a rating because the plaintiff's "attitude and time out" had caused her "reason for concern."

On June 15, 1997, Ms. Wilson went into Ms. Massie's office to discuss the possibility of being promoted. Ms. Wilson stated to Ms. Massie that she understood that there would be several openings in the department for the position of Processor and that she wished to be considered for them. At this meeting, Ms. Massie told Ms. Wilson that she would receive one of the positions. However, Ms. Wilson never did receive a Processor job.

Although Ms. Wilson was never promoted to Processor, New South placed others in Processor positions in the Direct Loan Department, both before and after her meeting with Ms. Massie on June 15, 1997. These decisions were made by Ms. Massie, with the consent of New

---

[2]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

South's Human Resources Department. Three Processor positions came available prior to Ms. Wilson's meeting with Ms. Massie on June 15, 1997. On March 10, 1997, New South transferred Amy Sides Turner, a white female, from her job as a Check Packager to be a Processor, because her department was experiencing a lack of loan volume. On May 12, 1997, New South hired Kimberly L. Green, also a white female, to be a Processor. On May 26, 1997, New South hired Patrice Nathan-Ferrill, a black female, to be a Processor. And on June 19, 1997, only four days after the meeting between the plaintiff and Ms. Massie, New South accepted an application for a Processor job from Pamela B. Newman, another white female, who was ultimately hired as a Processor on August 1, 1997. New South also admits that it hired an additional Processor in both October 1997 and another sometime in 1998 and that these individuals were white.

On March 13, 1997 and July 25, 1997, Ms. Wilson was involved in separate disputes with co-employees, the latter of which it is agreed was more serious. In the first incident, Ms. Wilson was involved in a dispute with one of her co-workers, Lori Gwin. Ms. Wilson was apparently displeased with the fact that Ms. Gwin had not returned some files to their proper place and then complained to Ms. Massie about it. Ms. Wilson contends that she was not loud or abusive, contrary to a memo Ms. Massie placed in Ms. Wilson's personnel file regarding the incident, although Ms. Wilson did acknowledge that Ms. Gwin had said or thought that they had "some kind of confrontation" at that time. Wilson Depo. at 125. And then, on July 25, 1997, Ms. Wilson was involved in a hostile confrontation with Ray Torrillo, the senior underwriter in her department.[3] Late that morning, Ms. Massie was out of the office at lunch

---

[3]Ms. Wilson did "understand" that when Ms. Massie was not present, those in the office could "go to" Mr. Torrillo with any problems, Def. Exh. 4, and she had even "assumed" that he was "in charge" when Ms. Massie was not there because "everybody else reported to him." Wilson Dep. at 43; see also Def. Exh. 4 (in which the plaintiff stated in a memo she prepared immediately following the incident that she "[felt] uncomfortable when [Torrillo is] in charge.") However, Ms. Wilson was never expressly told until after the incident in question that Mr. Torrillo was actually

and Ms. Wilson was entering loan information on the computer system, which she had previously been told was her first priority. Sometime between about 11:30 a.m. and 11:45 a.m., Mr. Torrillo approached Ms. Wilson sitting at her desk and told her that he needed her to stop what she was doing and pull a number of files as soon as possible because he would be leaving at noon. Ms. Wilson replied that she would pull the files but that she was almost finished entering her loan on the system and wanted to complete that task first. After walking by her desk, Mr. Torrillo returned a few minutes later and noticed that Ms. Wilson had not started to pull the files. He then said to her, "I thought I told you that I needed the files to be pulled before I leave, and that they needed to be done before twelve o'clock." Wilson Dep. at 80. She again told him that she needed to finish putting her loan on the system and that she would pull the files in a few minutes. Mr. Torrillo then pointed at Ms. Wilson's face with a pen and told her in a rude tone of voice, "I mean now, Cynthia." Ms. Wilson stood up and told him not to talk to her in "that tone of voice" and to please get that pen "out of" her face. Mr. Torillo instructed her to go with him to Ms. Massie's office, but Ms. Wilson refused to do so, stating that she would go in there and meet with him only after Ms. Massie returned from lunch. After Mr. Torrillo angrily walked away, Ms. Wilson pulled the requested files in time for them to be used for the purpose for which Mr. Torrillo had sought them.

On August 8, 1997, Ms. Wilson filed a formal charge with the Equal Employment Opportunity Commission ("EEOC"). In this document, Ms. Wilson states her belief that she had been the victim of racial discrimination, based upon claims that on or about June 15, 1997 she was not promoted to a Processor position and that on July 25, 1997 she was placed in an "intimidating and hostile" situation when Mr. Torrillo pointed a pen in her face. This document also indicates that, sometime between inquiring on June 15, 1997 about being promoted to processor and the filing of her EEOC charge on August 8 of that same year, Ms. Wilson asked

---

the person in authority in the department when Ms. Massie was not present in the office.

Ms. Massie why she was not promoted and in response Ms. Massie had "alluded to [Ms. Wilson's] attendance as being a problem."  In a letter to the EEOC dated October 6, 1997, Scott Page, a New South Vice President articulated New South's position with respect to Ms. Wilson's charges of discrimination, alleging that Ms. Wilson had poor attendance and had been counseled numerous times regarding her performance and conduct at work.   On December 23, 1997, an EEOC investigtor sent a letter to Ms. Wilson stating that the EEOC had concluded its investigation of her charges and had determined that Ms. Wilson was not promoted due to her "unsatisfactory job performance" and "poor attendance" in her then-assigned position.

On September 16, 1997, Ms. Massie and Peggy Wick, a New South Assistant Vice President in the Human Resources Department, met with Ms. Wilson to discuss her first annual Performance Review.  Ms. Massie rated Ms. Wilson's overall performance as 3.5323 out of a possible 6, which translated to between "needs improvement" and "meets job standards."  The Performance Review stated that, according to reports by the Secondary Marketing Department, of 359 total errors and omissions made by the Consumer Mortgage Division Wholesale/Retail Departments, 146 or 40.66% were identified as Ms. Wilson's responsibility.  Massie Aff., Exh. 6, 7 at 2.  The Performance Review also stated that Ms. Wilson had been "disruptive with loud disagreements with other employees."   Massie Aff., Exh. 7 at 2.  And finally, the Performance Review stated that Ms. Wilson's attendance to date had been 92.55%, that this fell below the 95% "benchmark" for "acceptable attendance," and that 54% of her absences had been on Mondays and Fridays "with the majority of the days off not pre-arranged, but rather [were accompanied by] a message left on the voice mail in the early morning hours stating that she would be absent."  Id.  After going through the Performance Review paperwork, Ms. Massie placed Ms. Wilson on probation for 30 days.  Wilson Depo. at 222.

On October 23, 1997, Ms. Massie informed her supervisor, David Mewbourne, that

Ms. Wilson's problems had continued and recommended that New South terminate her employment. Several days later, Ms. Massie terminated Ms. Wilson from the Direct Loan Department, although Ms. Wilson was placed on paid leave until she was given an assignment in another department at New South. Ms. Wilson later began to work in New South's Automobile Lending Division, at no loss in pay, and then was transferred to a part-time position in the Support Group Division, which she still holds.

On February 23, 1998, Ms. Wilson filed this action alleging the single claim that New South racially discriminated against her by failing to promote her to a Processor position and thereby violated Title VII. Ms. Wilson seeks for this Court (1) to permanently enjoin New South from discriminating against her; (2) to order New South to place her in a Processor job with full salary, seniority, and benefits; (3) to order New South to compensate her for all the benefits she would have received; (4) to award her punitive damages and (5) to award her attorney fees.

## CONTENTIONS AND ANALYSIS

### A. Direct Evidence of Discrimination

New South argues that it is entitled to summary judgment for several reasons. First, New South alleges that there is no direct evidence suggesting that Ms. Massie, who New South admits was the decisionmaker in this case, refused to promote Ms. Wilson to a Processor job based on racial bias. Ms. Wilson, seems to suggest, however, that there is direct evidence proving Ms. Massie was motivated by racial discrimination in making the decision not to promote her.

Ms. Wilson points to a section of Ms. Massie's deposition testimony and suggests that it constitutes direct evidence that she was not promoted because of her race. In her deposition, when Ms. Massie was asked why she had recommended that New South terminate Ms.

Wilson's employment in October 1997,[4] Ms. Massie responded that it had been based upon Ms. Wilson's performance and "her disruptiveness." Massie Depo. at 38. When asked to further explain what she meant by "disruptiveness," Ms. Massie first gave as examples the aforementioned incidents involving Lori Gwin and Ray Torrillo. Id. at 39-40. However, Ms. Massie mentioned as another instance of disruptiveness an occasion in which Patrice Nathan-Ferrill, a black female whom Ms. Massie had hired as a Processor, had also spoken to Ms. Massie "about [Ms. Wilson] wanting to get something started in the office." Id. at 40. Specifically, Ms. Massie stated that, based upon her conversation with Ms. Nathan, she believed that Ms. Wilson "made the remark to Patrice that she would never be recommended for a customer service award because she was black." Id. at 41. Ms. Wilson argues that this statement by Ms. Massie shows that she was motivated by racial animus in her decision not to promote Ms. Wilson. Ms. Wilson further emphasizes that her statement to Ms. Nathan indicating that Ms. Wilson believed she was a victim of racial discrimination was protected activity under Title VII, and thus could not lawfully form the basis for an adverse employment decision.

In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Statistical evidence has not been offered in the instant case, leaving only direct and circumstantial evidence as the only potential means by which Ms. Wilson might prove discriminatory intent. "'When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available.'" Evans v. McClain of

---

[4]As discussed above, while Ms. Massie had recommended that New South terminate Ms. Wilson, New South did not do so. Rather, Ms. Wilson was transferred to another department in November 1997.

Georgia, Inc., 131 F.3d 957, 961 (11th Cir. 1997), quoting Trotter v. Board of Trustees of University of Alabama, 91 F.3d 1449, 1453 (11th Cir.1996) (further citations omitted). "The basis for the analysis is that once a plaintiff produces direct evidence of a discriminatory motive, and the trier of facts accepts this testimony "the ultimate issue of discrimination is proved." Evans, at 961, quoting Bell v. Birmingham Linen Service, 715 F.2d 1552, 1556 (11th Cir.), cert. denied, 467 U.S. 1204 (1984). As such, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." Evans, at 962, quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989).

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998), citing Carter v. City of Miami, 870 F.2d 578, 580-81 (11th Cir.1989). However, the Eleventh Circuit has "marked severe limits for the kind of language to be treated as direct evidence of discrimination." Jones v. Bessemer Medical Center, 151 F.3d 1321, 1322 n.11 (11th Cir. 1998). Thus, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard, at 1330, citing E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir.1990).

The Court holds that Ms. Massie's statement indicating that she recommended New South terminate Ms. Wilson's employment because she considered Ms. Wilson to be "disruptive," based at least in part upon her belief that she had complained to her co-worker about being the victim of racial discrimination, is not direct evidence of an intent to discriminate on the basis of race. Ms. Massie's statement might actually constitute direct evidence that Ms. Massie did not promote Ms. Wilson in retaliation for her having complained

about alleged racial discrimination at New South.[5] However, Ms. Wilson has not ever alleged, either in her EEOC charge or in her complaint in this action, a claim of such retaliation under Title VII. Rather, she claims that New South violated Title VII in that Ms. Massie did not promote her because she is black. Retaliation and discrimination are separate offenses under Title VII. Meeks v. Computer Associates Intern.,15 F.3d 1013, 1021 (11th Cir. 1994). Because Ms. Wilson has alleged only a claim of discrimination and not a claim of retaliation, the latter is not properly before this Court. Cf. Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1135 n.4 (stating that where an employee pursued his claim of retaliation but abandoned his claim of discrimination, the discrimination claim was not before the court). Thus, even assuming that Ms. Wilson's complaint to her co-employee would be protected activity for the purposes of a retaliation claim,[6] only Ms. Wilson's discrimination claim is before the Court, and it cannot be said that Ms. Massie's statement about Ms. Wilson's alleged "disruptiveness" could prove, without requiring the drawing of any inference, that she decided not to promote Ms. Wilson because she is black.

---

[5]Title VII makes it an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." §42 U.S.C. 2000e-3(a); Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). Thus, an employee may bring a claim alleging that she suffered some adverse employment action in retaliation for having opposed some allegedly racially discriminatory practice of her employer. See id. And as with a discriminatory treatment claim, a plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. Little, at 959, citing Coutu v. Martin County Bd. of County Com'rs, 47 F.3d 1068, 1074 (11th Cir.1995) (per curiam).

[6]See Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130 (5th Cir. Unit A 1981) (Holding that employee's public boycotting and protesting of employer's allegedly racially discriminatory employment practices constituted protected activity under Title VII); see also Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2nd Cir. 1990) ("In addition to protecting the filing of formal charges of discrimination, § 704(a)'s opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.")

### B.  Circumstantial Evidence of Discrimination

When a plaintiff offers circumstantial evidence to prove a Title VII claim, a court is to employ the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, the plaintiff must establish a prima facie case of discrimination, which creates a presumption of discrimination.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); Walker v. Mortham, 158 F.3d 1177, 1183-84 & n.10 (11th Cir. 1998).  The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual.  McDonnell Douglas, at 802-04.

### 1.  The Prima Facie Case

New South first argues that Ms. Wilson cannot establish a prima facie case, the first step in the foregoing analysis.  In the Eleventh Circuit, a plaintiff may establish a prima facie case under the McDonnell Douglas framework for a Title VII discrimination claim by showing (1) that she belongs to a racial minority; (2) that she applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer either continued to seek applicants from persons of complainant's qualifications or the employer in fact filled the position(s) with persons outside the plaintiff's protected class.  Walker, at 1186.[7]

---

[7]In its brief, New South argues that, in addition to the four elements listed above, Eleventh Circuit law requires Ms. Wilson to show a fifth element in order to establish a prima facie case for her Title VII "failure to promote" discrimination claim: that New South promoted equally or less qualified persons to the position(s) she sought. Defendant's Brief, at 14. New South also advances arguments at the prima facie stage corresponding to that element, claiming that Ms. Wilson was not as qualified as successful applicants for the Processor jobs. Id. at 15-16. However, in Walker, the Eleventh Circuit expressly held that the relative qualifications of a plaintiff and successful job applicants are not relevant at the prima facie stage of the McDonnell Douglas framework, ostensibly overruling a line of cases suggesting otherwise. See 158

New South does not question that that Ms. Wilson is black and therefore can establish the first element of her prima facie case. Nor does New South seem to contend that there is insufficient evidence from which a factfinder might reasonably determine that Ms. Wilson was qualified for the position, that she was rejected, or that after her rejection the employer filled the Processor positions. However, New South first argues that Ms. Wilson cannot establish the fourth element of her prima facie case with respect to the Processor position that New South filled on May 26, 1997 by hiring Patrice Nathan-Ferrill, who is black. The Court agrees. Ms. Wilson cannot establish a prima facie case regarding that particular Processor position, because Ms. Wilson does not dispute that Ms. Nathan-Ferrill is black and therefore within her protected class.[8]

New South next argues that Ms. Wilson cannot establish her prima facie case with respect to the two other Processor positions that New South filled with white persons prior to June 15, 1997, because, New South maintains, there is no evidence to suggest that Ms. Wilson actually applied for those positions, either formally or informally. The second element of the McDonnell Douglas prima facie case generally requires a plaintiff to show that she applied for the position in question. Walker, 158 F.3d at 1186. As mentioned previously, New South transferred Amy Sides Turner, a white female, to a processor position on March 10, 1997, and

_____

F.3d at 1185-1192. Rather, the Walker Court explained, the relative qualifications of such persons may only become relevant in the second and third stages of the framework. See id. Thus, Ms. Wilson need not prove, as part of her prima facie case, that she was better qualified than the successful applicants.

[8]This, however, does not mean that in all cases in which a black person receives a promotion over another that a plaintiff cannot meet the prima facie case requirement. For example, stereotypes regarding dark-skinned as opposed to light-skinned blacks, about African-American grooming, hairstyles, etc., may play well to a supervisor attempting to hire the "less black" of two candidates. Race discrimination is not about one person's apprehension of race; it is about another's beliefs regarding the person of that race. In any case, Plaintiff has offered no evidence to indicate that Ms. Massie considered her less suitable for the promotion on the basis that she believed Ms. Nathan-Ferrill to have fewer stereotypically negative "black" characteristics.

hired Kimberly L. Green to be a Processor on May 12, 1997. It is undisputed that Ms. Wilson did not submit a formal application with the Human Resources Department for any Processor position.

Ms. Wilson responds to this argument, however, by referring the Court's attention to Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527 (11th Cir. 1992). In that case, the Eleventh Circuit held that if an employer uses an informal promotion system in which it does not post openings or take applications for positions, a plaintiff may have no means of showing whether or not the employer considered her for the job. Id. at 533, citing Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984). Moreover, the Court stated that where such an informal promotion system is utilized, the employer has a duty to consider all those who might reasonably be interested, as well as those who have actually learned of the job and expressed interest. Id. Thus, even if a plaintiff did not actually apply for a position, a plaintiff may establish a prima facie case of discrimination under the McDonnell Douglas framework "as long as [she] establishes that the company had some reason or duty to consider him for the post." Carmichael, at 1133.

There is some evidence that New South does, at least generally, have a formal promotion system in which openings are posted on company bulletin boards and advertised in the newspaper and formal applications are accepted by the Human Resources Department. See Massie Depo. at 9, 12, 17, 22-23. Ms. Wilson does not offer evidence disputing this. Indeed, Ms. Wilson actually states in one of her affidavits that she knew Processor positions were available after she had discussed her interest in becoming a Processor with Ms. Massie on June 15, 1997 because she saw that New South was advertising for Processors in the newspaper. Wilson Aff. (I) at 1. However, a jury could reasonably find that a formal process was not used with respect to the particular Processor positions filled by Ms. Turner and Ms. Green. As to the former, it appears that Ms. Turner was simply transferred from another department through a relatively informal process, as there is no evidence that she ever

submitted a formal application for the job. Further, Ms. Wilson expressed her desire for a Processor position in her interview before she was hired. Wilson Depo. at 49. Thus, New South would have had a duty to consider her because she might reasonably be interested in the job. As to the latter Processor position, Ms. Massie acknowledges that she was looking for Processors in April 1997, but she stated that she could not recall that there were postings for such on company bulletin boards. Massie Depo. at 23. Also, while Ms. Green did submit a formal application for the Processor job that she ultimately received on May 12, 1997, that application indicates that she was not referred by an advertisement, but applied because she had worked closely with New South at her prior job and knew Ms. Massie. See Massie Aff. Exh. 12 at 1. Moreover, in its letter to the EEOC in response to Ms. Wilson's charge of discrimination, New South indicated that Ms. Massie actually did consider Ms. Wilson for a Processor position opening in April 1997. Pl.'s Exh. 12, at 2. The Court concludes, therefore, that a jury might reasonably find that the reason Ms. Wilson was not hired for the Processor position filled by Ms. Green was not because New South was unaware that Ms. Wilson might reasonably be interested in that position. Accordingly, except as to the aforementioned Processor position filled by Ms. Nathan-Ferrill on May 26, 1997, the Court rejects New South's arguments that Ms. Wilson cannot establish a prima facie case of discrimination.

### 2. Rebuttal/Articulated Reasons

Under the McDonnell Douglas analysis, a valid prima facie case creates a presumption that discrimination has occurred. Walker, 158 F.3d at 1183-84, citing Burdine, 450 U.S. at 254 n.7. Under the second step of the analysis, the defendant may rebut a prima facie case of intentional discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment decision of which the plaintiff complains. Walker, at 1184. To satisfy this burden of production, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Combs v. Plantation Patterns, 106 F.3d

1519, 1528 (11ᵗʰ Cir. 1997), quoting Burdine, 450 U.S. at 254-55. "The defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question; instead it must raise a 'genuine issue of fact as to whether it discriminated against the plaintiff" by making that decision." Id., quoting Burdine at 255. "In other words, 'the defendant must clearly set forth, through the introduction of admissible evidence,' the reason for its adverse employment decision, and that reason 'must be legally sufficient to justify a judgment for the defendant." Id.

New South has articulated several reasons for failing to promote Ms. Wilson to a Processor position. New South first claims that Ms. Wilson did not receive any of the available Processor positions because Ms. Massie believed that Ms. Wilson's job performance in her then-assigned position of Processor Support indicated that she was not suited for promotion. More specifically, New South claims that Ms. Wilson was not promoted to any of the Processor jobs in question (1) because she had a relatively poor work attendance record and (2) because she had shown attitude problems that had caused friction and confrontational incidents with co-workers. New South also claims that Ms. Wilson did not receive the particular Processor jobs filled by Ms. Turner, Ms. Green, and Ms. Newman because, New South alleges, they had superior qualifications to Ms. Wilson. However, even if true, there is no evidence suggesting that Ms. Massie actually decided not to promote Ms. Wilson based on her qualifications relative to other applicants. Ms. Massie does state in her affidavit that she believes Ms. Wilson was not "nearly as qualified to be a Loan Processor as Ms. Green . . . or Ms. Newman." Massie Aff. ¶ 21. She also recites how Ms. Turner had responsibilities in her prior department before her transfer that would translate well to being a Processor and that Ms. Turner had received a very favorable review from her supervisor in her prior department. Id. at ¶ 22. But nowhere does Ms. Massie state either in her affidavit or in her deposition that she actually based her decision not to promote Ms. Wilson based upon Ms. Wilson's experience or qualifications relative to the successful applicants. Rather, Ms. Massie alleges that she had already decided not promote

Ms. Wilson because of the attendance and attitude shortcomings she perceived Ms. Wilson to have shown in her then-assigned Processor Support job. An employer may not meet its intermediate burden under the McDonnell Douglas/Burdine framework by offering a hypothetical justification that was not actually considered by the employer in making the employment decision. Turnes v. AmSouth Bank, 36 F.3d 1057, 1061-62 (11th Cir. 1994). The Court concludes that New South has met its burden by producing sufficient evidence indicating that it did not promote Ms. Wilson because of her alleged attendance and attitude deficiencies. However, the Court holds that New South has not met its burden with respect to its offered justification that Ms. Wilson's experience and qualifications were inferior to those of Ms. Turner, Ms. Green, and Ms. Newman. The Court will now proceed to the third and final step of the McDonnell Douglas analysis.

### 3. The Question of Pretext

Once it carries its burden under the second stage of the analysis by articulating legitimate, nondiscriminatory reasons for the employment action, the defendant has rebutted the plaintiff's prima facie case, the initial presumption of intentional discrimination drops from the case, and the McDonnell Douglas framework requires the plaintiff to demonstrate that the stated reason(s) were pretextual. Bogle v. Orange County Bd. of County Com'rs, 162 F.3d 653, 658 (11th Cir. 1998) (citations omitted). The plaintiff may succeed in discrediting the defendant's proffered reasons "'either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Combs, 106 F.3d at 1528, quoting Burdine, 450 U.S. at 256. "A plaintiff, relying on evidence that the employer's proferred reasons are unworthy of credence as the basis for an inference of discrimination, will only succeed if there is sufficient evidence for a reasonable person to conclude that the employer's proffered reasons were not the basis for the employment decision." Walker v. Nationsbank of Florida, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J., concurring),

(citations omitted). "To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision." Id., citing Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir.1994); McNabola v. Chicago Transit Authority, 10 F.3d 501 (7th Cir.1993).

Although the plaintiff "must have an opportunity to demonstrate that the proffered reason[s were] not the true reason[s] for the employment decision," Burdine, 450 U.S. at 256, this is not to say that a plaintiff must always produce more evidence beyond that offered to prove the prima facie case. The same evidence that is used to establish the prima facie case may also cast sufficient doubt on the employer's proffered legitimate, nondiscriminatory basis for its decision. See Walker, 158 F.3d at 1185 n.12. However, the plaintiff must present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext, and mere conclusory allegations and assertions by the plaintiff will not suffice to survive a motion for summary judgment. Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (citations omitted). But a plaintiff is entitled to survive summary judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action. Bogle, 162 F.3d at 658; Combs, 106 F.3d at 1529; see also St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

Ms. Wilson argues that New South's proffered reason that she had a relatively poor attendance record is merely a pretext. She first claims that this reason has no basis in fact. As support, she points to her two affidavits filed in opposition to the motion for summary judgment, wherein she states, "I had good attendance," and "I have personally witnessed all of the employees attendance, including my own, and my attendance is as good or better than the other employees in the department." Wilson Aff. (I) at 1, 4. New South counters by pointing

to the affidavit of Ms. Massie, in which she states, "The average attendance for my hourly employees at the time of Plaintiff's claim was 97.30%, and Plaintiff's attendance was 92.55%." Massie Aff. ¶ 19. Ms. Wilson has returned that volley by moving to strike that portion, among others,[9] of Ms. Massie's affidavit, apparently on the ground that it is not based upon Ms. Massie's firsthand knowledge, but rather upon her examination of New South's company attendance records that are not in evidence. However, even assuming that ¶ 19 of Ms. Massie's affidavit is due to be struck[10] and also assuming that Ms. Wilson could show that Ms. Massie

_____

[9]Ms. Wilson has also moved to strike other portions of Ms. Massie's affidavit. In addition to the sentence set out in the text, regarding Ms. Wilson's attendance relative to other employees in the Direct Loan Department, Ms. Wilson also objects to affidavit statements by Ms. Massie to the effect that she was told that Mr. Torrillo had instructed Ms. Wilson that she could not leave early on one occasion (¶ 6), that other employees had complained about the disruptiveness caused by Ms. Wilson's "chronic use of the speaker phone and excessive personal phone calls" (¶ 7), that she had counseled the plaintiff about "her refusal to take direction" and "her inappropriate behavior" (¶ 9), that she did not believe Ms. Wilson was as qualified to be a loan processor as Ms. Green, Ms. Nathan-Ferrill or Ms. Newman" (¶ 21), that according to Ms. Turner's supervisor she had required little or no supervision in her prior department (¶ 21), and finally that race played no role in her decision not to promote Ms. Wilson (¶ 24). Ms. Wilson makes a general statement objecting to these statements on the grounds that they are "either hearsay, opinions, speculation or lack of firsthand knowledge." The Court will discuss in note 9 below Ms. Wilson's motion to strike with respect to Ms. Massie's statement about the specific relative work attendance of Ms. Wilson and the other employees in the office. But the Court concludes that Ms. Wilson's motion to strike is due to be denied as to all other affidavit statements set out above. These statements are either definitionally not hearsay because they are not offered to prove the truth of the matter asserted, or are admissible either to show Ms. Massie's knowledge when she made the employment decision, or qualify as business records because they simply refer to memoranda prepared by Ms. Massie and placed in Ms. Wilson's personnel file and which memoranda are in evidence.

[10]Rule 56(e), Fed. R. Civ. P., requires that affidavits submitted in support of or in opposition to a motion for summary judgment must "be made on personal knowledge . . ." Ms. Massie's affidavit, however, states that it is "based upon [her] personal knowledge or upon [her] review of company records." (Emphasis added). It appears that New South implicitly concedes in its response to the motion to strike that Ms. Massie's statement about the precise attendance percentages of Ms. Wilson and the other employees under her supervision is, in fact, based upon her review of company records. New South argues, however, that Ms. Massie is generally aware of and is competent to testify to the attendance of her employees and that it is not aware of any rule prohibiting an affiant from testifying to the content of company records not in evidence. It appears to the court, though, that the statement in question may very may not comply with Rule 56(e) and may be hearsay. New South does not allege that Ms. Massie reviewed the company attendance records before deciding not to promote Ms. Wilson, and thus that her statement is

was, in fact, mistaken in her belief that Ms. Wilson's attendance was poor in relation to the other employees in the Direct Loan Department, such would not unequivocally prove that Ms. Massie did not rely on that reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. In <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466 (11th Cir. 1991), the Eleventh Circuit explained as follows:

> Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [Age Discrimination in Employment Act][11] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.' <u>Mechnig v. Sears, Roebuck & Co.</u>, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted). '[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory. . . .' <u>Moore v. Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982)."

939 F.2d at 1470.

The record indicates that Ms. Massie documented her concerns about Ms. Wilson's absences from work as early as December 3, 1996, the date she completed Ms. Wilson's 90-day

---

offered to show her knowledge at the time of her decision. Rather, it seems New South is offering Ms. Massie's statement as proof of what is stated in the business records. Those records themselves would very likely be admissible under the business records exception to the hearsay rule, see FRE 803(6), and Ms. Massie might even be qualified to offer an affidavit to authenticate them, <u>id.</u>, but New South appears to be attempting to have Ms. Massie testify as to the truth of the attendance records without offering the records themselves into evidence. Thus, there is at least a substantial question as to whether ¶ 19 of Ms. Massie's affidavit should be struck. However, the court will simply not consider Ms. Massie's statement of the precise attendance percentages in deciding the motion for summary judgment.

[11] It is well established law that <u>Elrod</u>'s analysis on this point, although decided in the context of a claim under the ADEA, is equally applicable to the pretext analysis for a Title VII claim. See <u>Eskra v. Provident Life and Acc. Ins. Co.</u>, 125 F.3d 1406, 1411 (11th Cir. 1997); <u>Elrod</u>, 939 F.2d at 1469-70 (discussing how the ADEA claims involve a slight modification of the <u>McDonnell Douglas</u> framework applicable to Title VII claims).

quality of hire performance review. There she indicated that Ms. Wilson's "time out" had caused her "reason for concern," and this was prior to the availability of any Processor positions in this case. The evidence also indicates that sometime between June 15, 1997 (the date Ms. Wilson met with Ms. Massie to discuss her potential promotion) and August 8, 1997 (the date Ms. Wilson filed her EEOC charge), Ms. Massie actually told her that her attendance was a problem in response to Ms. Wilson's questioning about a Processor position.[12] Moreover, Ms. Wilson admits that Ms. Massie also told her at her first annual performance review on September 16, 1997 that her attendance was 92.55% and again expressed that this was unsatisfactory. Nonetheless, faced with these two express statements concerning Ms. Massie's assessment of her deficient attendance, Ms. Wilson makes no specific allegation that she ever told Ms. Massie that her perceptions about Ms. Wilson's attendance were incorrect or that her attendance was in fact better than that of most of her co-workers.[13] Nor did Ms. Wilson advise

---

[12] In an affidavit she swore on December 14, 1998 and filed in opposition to New South's motion for summary judgment, Ms. Wilson indicates that she was not told until her first annual performance review on September 16, 1997, discussed in text below, that she was not promoted to Processor because of "poor performance, absenteeism, and tardiness," Wilson Aff. (I) at 2, ¶ E. However, that sworn statement conflicts to some extent with Ms. Wilson's statement in her August 8, 1997 EEOC charge that she had questioned Ms. Massie about why she had not been promoted and that in response Ms. Massie had "alluded to [Ms. Wilson's] attendance as being a problem." It is well established that a party cannot give "clear answers to unambiguous questions" in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. Van T. Junkins and Associates v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984). When this occurs, the court may disregard the affidavit as a sham. Id. at 658-59. Courts, however, apply this rule sparingly because of the harsh effect this rule may have on a party's case. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987). A charge of discrimination to the EEOC is, like a deposition, a sworn statement. The court concludes that Ms. Wilson cannot attempt to raise an issue of material fact in an affidavit that is contrary to her prior sworn EEOC charge without explaining the contradiction. The court thus determines that the evidence, in the light most favorable to Ms. Wilson, indicates that sometime between June 15, 1997 and August 8, 1997 Ms. Massie "alluded to" Ms. Wilson that her attendance was "a problem" in response to a question about why Ms. Massie had not promoted her to Processor. The June 15, 1997 date is established by Ms. Wilson's affidavit asserting that she was never told prior to her request for a promotion on that date that her attendance was "a problem." Wilson Aff. I at 3, ¶ C.

[13] Ms. Wilson does state in her deposition that at her one-year review on September 16, 1997 she told Ms. Massie and Ms. Wick that she told them that she believed the relatively poor review she received

Page 21 of 25

Ms. Massie that she should have checked attendance records. Indeed, Ms. Wilson still does not allege that company attendance records bear out her assertion that her attendance was actually better than that of her co-workers. Thus, even if Ms. Massie was in fact wrong in her assessment that Ms. Wilson's attendance was unsatisfactory, Ms. Wilson has not offered proof of specific facts indicating that Ms. Massie could not have had a good faith belief in her assessment of Ms. Wilson's attendance when she decided not to promote her. Thus, under Elrod, the plaintiff has failed to present sufficient evidence on this ground from which to infer that New South's explanation of deficient attendance was merely pretextual.

A similar analysis applies regarding New South's offered justification that Ms. Massie considered Ms. Wilson to have attitude problems that caused friction and disruptive incidents with co-workers. On the December 3, 1996, 90-day quality of hire survey, Ms. Massie noted that she found Ms. Wilson's "attitude" to be a problem. It is also undisputed that Ms. Wilson was involved in incidents with co-workers on both March 13, 1997, only three days after Ms. Turner was transferred into first Processor job opening in this case, and on July 25, 1997. Ms. Wilson claims that the first of these incidents, with Lori Gwin, was not that serious, although she admits that Ms. Gwin thought that they had a confrontation. Ms. Wilson also contends that the second incident, with Mr. Torrillo, was not her fault. However, Ms. Wilson does not show how Ms. Massie could not have had a good faith and objectively reasonable belief that these were examples of perceived disruptiveness that prevented her from cooperating with her coworkers and supervisors.

To show that Ms. Massie did not actually believe that Ms. Wilson had an attendance or

---

was just completely wrong." Wilson Depo. at 143. She also did mention specifically that she did not have any prior knowledge of statistics cited to her at that review about the inaccuracies in her work, and Ms. Wilson suggested to Ms. Massie and Ms. Wick that she did not believe that the statistics accurately represented her work. Id. However, the Court does not consider these statements to be sufficient evidence to show that Ms. Massie could not have had a good-faith belief that Ms. Wilson's attendance record was subpar and indicated that she should not be promoted.

attitude problem that manifested itself in incidents with co-workers, Ms. Wilson relies heavily upon a handwritten note dated July 18, 1997 sent to her by Ms. Massie. In this note, Ms. Massie expresses her thanks for Ms. Wilson's "hard work and attention to detail" and her appreciation that Ms. Wilson is "interested in doing the job <u>right</u>." (Emphasis in original). Ms. Massie also stated how she "depend[s] on" Ms. Wilson "to help keep [the department] straight." However, this note, while certainly complimentary to Ms. Wilson's work on a general level, does not constitute evidence indicating that Ms. Massie's attitude and attendance explanations are pretextual because it does not refer at all to her attendance or to her relations with her co-workers. Moreover, the note was also written prior to the July 25, 1997 confrontation with Mr. Torrillo, which reinforced Ms. Massie's existing belief that Ms. Wilson was sometimes "disruptive." Thus, the note would be of extremely limited value with respect to Ms. Massie's decisions not to place Ms. Wilson in any Processor positions that opened after July 25, 1997.

Ms. Wilson also claims that Ms. Massie's deposition statement, that she considered Ms. Wilson to be "disruptive" and cited as an example that Ms. Wilson had told another black employee, Ms. Nathan-Ferrill, that she, Ms. Wilson, would never be recommended for a customer service award because she is black, is substantial evidence of pretext because it indicates that Ms. Massie was actually motivated by racial animus, rather than by her offered reasons, in denying Ms. Wilson a promotion. The Court disagrees. It is true that language showing some racial animus may be significant evidence of pretext once a plaintiff has set out the prima facie case under Title VII, even if that language does not amount to direct evidence of race discrimination. <u>Jones v. Bessemer Carraway Medical Center</u>, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998). However, the statement in question would be more probative to a Title VII claim of retaliation for having engaged in protected activity, rather than a Title VII claim of race discrimination. As noted previously, Ms. Wilson has not alleged a claim of retaliation, but one of racial discrimination. Ms. Massie's statement may be somewhat relevant to her allegation of pretext in this case, insofar Ms. Massie's statement could be interpreted as

Page 23 of 25

articulating a stereotype that black women are employees who, as a group, are prone to complain excessively. However, this is not sufficient evidence to show pretext. Ms. Massie learned of Ms. Wilson's statement from Ms. Nathan-Ferrill, who was hired on May 26, 1997. Thus, Ms. Massie's conversation with Ms. Nathan-Ferrill must have occurred after that date. The evidence suggests that Ms. Massie had already documented her concerns about Ms. Wilson's alleged disruptiveness on several occasions. Thus, if anything, it appears that Ms. Nathan-Ferrill's conversation with Ms. Massie about Ms. Wilson's complaints of racial discrimination simply reinforced an already existing belief in her mind about Ms. Wilson's problems.

Finally, Ms. Wilson seems to argue that her absenteeism could not have formed the basis of the decision not to promote her because, she claims, New South does not have a formal written policy with regard to attendance. The Court disagrees. In the New South employee handbook, under the section entitled "Absence," it states in pertinent part, "Continued problems with absenteeism are considered a very serious matter and will be dealt with through disciplinary action up to and including termination." Def. Exh. 11.

To summarize, Ms. Wilson failed to produce evidence sufficient to permit a reasonable jury to disbelieve New South's proffered nondiscriminatory explanations that it did not promote Ms. Wilson because of her attendance and attitude problems indicating that she had difficulties getting along with others in the office. Because of that failure, there are no genuine issues of material fact existing, and New South is entitled to a judgment as a matter of law.

### CONCLUSION

A plaintiff in a discrimination case based on circumstantial evidence can avoid a summary judgment by putting on a prima facie case and by producing evidence sufficient to discredit in the mind of a reasonable jury all of the defendant's proffered reasons for its actions. In this case, however, Ms. Wilson failed to produce evidence to reject as spurious New South's explanations that it denied Ms. Wilson a promotion to a Processor position because of her

attendance and attitude problems that had caused disruptions with other employees. Accordingly, the Court holds that New South's motion for summary judgment under Rule 56, Fed. R. Civ. P., is due to be GRANTED.

DONE and ORDERED this 25th day of February 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE